UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : DOCKET NO.3:02CR311 (AWT) |
| | : |
| GARY BLONDER | : March 16, 2005 |

## GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

This memorandum is submitted to address changes in the law since the Government's original memorandum was filed on July 23, 2004. It also address the defendant's subsequent submissions in support of his motion for a downward departure from his applicable sentencing range based on his claim that he suffered from "diminished capacity." Specifically, Gary Blonder has moved this Court for a downward departure pursuant to U.S.S.G. § 5K2.13 on the grounds that he suffers from "Attention Deficit/Hyperactivity Disorder" (hereinafter ADHD). Although the motion was included in his sentencing memorandum submitted prior to the Supreme Court's decision in *United States v. Booker*, 2005 WL 50108 (U.S. Jan. 12, 2005), it remains relevant since the United States Sentencing Guidelines, although now only advisory, are still to be given substantial consideration in fashioning an appropriate sentence. The Government submits that the Court should decline to reduce the defendant's sentence basis of his claimed ADHD since this mental condition in this case does not rise to the level of causing a "significantly reduced mental capacity." Furthermore, even if it did, the defendant has failed to demonstrate a causal connection between the ADHD and his criminal conduct.

**I. Post Booker Sentencing Procedure**

In *Booker* the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury. As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory." *Booker*, 2005 WL 50108, at *16. This ruling results in a system in which the sentencing court, while required to consider the Guidelines, may impose a sentence within the statutory maximum penalty for the offense of conviction. The sentence will be subject to appellate review for "reasonableness." *Id.* at *24.

The Court of Appeals for the Second Circuit has summarized the impact of *Booker* as follows:

> "First, the Guidelines are no longer mandatory.
>
> Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a).
>
> Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range, or at least identification of the arguably applicable ranges, and consideration of applicable policy statements.
>
> Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (i) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence.
>
> Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence."

*United States v. Crosby*, 397 F.3d 103 113 (2d Cir. 2005) (spacing altered).

When imposing sentence, a district court must be mindful that "*Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." *Id.* at 113. Both the Supreme Court and the Court of Appeals expect "sentencing judges faithfully to discharge their statutory obligation to 'consider' the Guidelines and all of the other factors listed in section 3553(a), . . . and that the resulting sentences will continue to substantially reduce unwarranted disparities while now achieving somewhat more individualized justice." *Id* at 114..

Accordingly, the defendant's request for a downward departure, although originally made when the guidelines were mandatory, must still be resolved so that this Court may give due consideration to the applicable guideline range in fashioning an appropriate sentence. It is the Government's position that Gary Blonder has not established that he suffered from diminished capacity at the time he made the false statement to which he pled guilty, nor has he established that even if his claimed ADHD fell within the meaning of U.S.S.G. § 5K2.13, that there was a causal connection between the ADHD and the crime.

**II. The Applicable Law and Discussion**

In determining the advisory guideline range, a district court may depart from the applicable sentencing guideline range if it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the sentencing commission in formulating the guidelines...." U.S.S.G.§5K2.0; see also Koon v. United States, 518 U.S. 81, 92 (1996). Section 5K2 sets forth several areas in which the Sentencing Guideline Commission acknowledges it was "not able to take into account fully in formulating the Guidelines," thus providing a potential basis for a departure. One of the areas identified is where the defendant

"committed the offense while suffering from a significantly reduced mental capacity." U.S.S.G. §5K2.13. An amendment to the Application Notes, effective November 1, 1998, defines "significantly reduced mental capacity" to mean a "significantly impaired ability to (A) understand the wrongfulness of the behavior compromising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful."

While the Second Circuit has yet to address the issue of whether ADHD may properly be deemed a mental illness that constitutes "a significantly reduced mental capacity" within the meaning §5K.13, the facts in this case, submitted in the defendant's medical opinions, suggest it is not applicable here. In support of his motion Blonder he has submitted three letters from Allan M. Jacobs, MD, and a neuropsychological evaluation by Dr. Karen Rapaport, Ph.D. In his first letter, dated January 6, 2004, Dr. Jacobs opined that due to ADHD Blonder (1) has "difficulty with concentrating other than for very short periods of time;" (2) "gets frustrated with others easily;" (3) "has to complete tasks immediately to ensure they get done;" (4) "does all the work himself finding it easier to cope with not having to keep track of others;" (5) "has always found it hard to follow through on instructions especially verbal ones;" and (6) "is better at following written instructions, but if he does not focus can easily do the wrong thing." In his follow up letter of April 4, 2004 Dr. Jacobs embellished that Blonder (1) has difficulty in concentrating, (2) gets frustrated easily with others, (3) is very disorganized, and (4) has a hard time following instructions if he does not focus. Finally, following Dr. Rapaport's neuropsychological evaluation, Dr. Jacobs opined that "in relation to the crime to which he has plead guilty, Mr. Blonder's ADHD would have resulted in his not following through on requests for information/instructions appropriately while at the same time thinking that he had done so and

supplied the information he was asked to give." (Letter of January12, 2005.)

It is clear that Dr. Jacobs opinion, even if accepted without challenge, does not amount to "diminished capacity" within the meaning of U.S.S.G. 5K2.13.  Nowhere does he state that the ADHD "significantly impaired [Blonder's] ability to (A) understand the wrongfulness of the behavior compromising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful."  Although he may have difficulty focusing on tasks, there is nothing in the reports submitted to suggest that he is not able to understand the importance of answering truthfully when asked a question.  It is also noted that this neuropsychological evaluation found that although he has a deficiency in the immediate recall of a string of information he had no problem with "remote recall." ("Remote recall appeared non deficient." Rapaport's Report, 5/5/04, p. 3)  There is certainly nothing to suggest that when he falsely stated he held no bonds that he did not recall the bond in his Paine-Webber account.

Even assuming Blonder's ADHD does fall within the meaning of U.S.S.G. § 5K2.13, the inquiry does not end here.  The Second Circuit has held that in order to merit a downward departure under this section, "a defendant must establish **both** 'reduced mental capacity **and a causal link** between that reduced capacity and the commission of the charged offense.'" United States v. Silleg, 311 F.3d 557, 564 (2nd Cir. 2002) (emphasis added), (citing United States v. Prescott, 290 F.2d 139, 146 (2nd Cir. 1990)).

Neither the letters from Dr. Jacobs nor the report of Dr. Rapaport identify or establish the connection.  Admittedly, if credited, the letters and report explain Blonder's poor record keeping, but that has no connection to the making of a false statement on interrogatories. There is nothing in the doctors' opinions to suggest that Blonder did not know it was wrong to lie or that he did

5

not appreciate the wrongfulness of making false statements.

The defendant having failed to establish any of the elements necessary for a downward departure for "diminished capacity," this Court should deny the request for a reduction in his sentence on that basis.

        Respectfully submitted,

        KEVIN J. O'CONNOR
        UNITED STATES ATTORNEY


        JAMES GENCO
        ASSISTANT UNITED STATES ATTORNEY
        Federal Bar No. ct00360
        450 Main Street, Room 328
        Hartford, CT 06103
        (860) 947-1101

## **CERTIFICATION OF SERVICE**

I hereby certify that a copy of the above and foregoing has been mailed, postage prepaid, on this 16th day of March 2005 to:

James W. Bergenn, Esq.
Moira L. Buckley, Esq.
Shipman & Goodwin, LLP
One American Row
Hartford, CT 06013-2819

------------------------------
James G. Genco
Assistant United States Attorney